STUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-cr-00009-SEB-VTW |
| | ) | |
| DYRONNE MASON, | ) | -02 |
| | ) | |
| Defendant. | ) | |

**ORDER ON PENDING MOTIONS**

After a traffic stop led to the discovery of narcotics in the detained vehicle, law

enforcement sought and received two search warrants—one for the vehicle, and one for

the contents of cell phones seized at the scene. Following the indictment of Defendant,

counsel made repeated requests over several months for information relating to the

second search warrant, which the Government neither confirmed nor disclosed. We are

asked here to rule that this negligent delay to provide discovery to the Defendant requires

suppression of the evidence or dismissal of the entire case. We decline to do so for the

reasons explicated below.

### I.      FACTUAL BACKGROUND

In March of 2020, Drug Enforcement Special Agent Keith Bikowski was

investigating Kevin Smyzer, Jr. for suspected drug trafficking. On March 25, Special

Agent Bikowski phoned Indiana State Police Trooper Nathan Abbott to tell him Smyzer

was heading southbound on I-65 from Indianapolis in a black Jeep Wrangler and to

1

request a traffic stop if possible. At approximately 7 p.m. that evening, Trooper Abbott,

who was on duty near Henryville, observed a Black Jeep Wrangler traveling 92 miles per

hour in a 70 miles per hour zone and make three lane changes without signaling. Trooper

Abbott initiated a traffic stop, which was thus supported by probable cause. Mr. Smyzer

was in the driver's seat of the vehicle, and the Defendant Mason was in the passenger's

seat. During the course of the traffic stop, Trooper Abbott deployed his K9 narcotics dog,

which alerted to the presence of narcotics within the car. A subsequent search of the

interior of the vehicle revealed suspected heroin, cocaine, and fentanyl. Smyzer and

Mason were arrested and transported to an Indiana State Police Post. The Jeep was

impounded, and both defendants' cell phones were taken. The following day, Trooper

Abbott applied for two warrants: one to re-enter the Jeep, and one to search the contents

of the defendants' cell phones which had been seized at the time of the arrest. Trooper

Abbott submitted the affidavits to a Clark Circuit Judge, who after review of the

affidavits, issued two search warrants, one for the Jeep and one for the cell phones, which

were thereafter searched by DEA Special Agents Bikowski and Corey Geller.

   On April 22, 2021, Mason was charged in a superseding indictment with possession

with intent to distribute fentanyl. Mason made an initial appearance before the Magistrate

Judge on May 21. Thereafter, the Government provided the defense with a discovery

flash drive, including all the DEA reports, Indiana State Police reports, witness

statements, and the search warrant and affidavit for the Jeep. Mason's original counsel

withdrew in August of 2021, and Jonathon Ricketts filed an appearance on Mason's

behalf on August 12. Mason's previous attorney provided Ricketts with the discovery

flash drive that the Government had provided to the defense in May. On August 17, Ricketts contacted the Government to request several additional categories of information if they had not been already transmitted. The Government did not respond to this request.

Ricketts continued his review of the discovery, contacting the Government again on September 30, requesting any remaining, discoverable evidence it had in its possession. Ricketts again contacted the Government on October 4 to pose four specific discovery questions to the assigned Assistant United States Attorney (AUSA). Again, receiving no response to the prior letters, Ricketts sent another letter on October 14 requesting a response to his communications. In addition, Ricketts specifically requested information regarding a second search warrant for the cell phone that was mentioned in a DEA report but was not on the discovery flash drive. Later on October 14, the Government responded with answers to the earlier discovery questions but did not address the second search warrant. The AUSA contacted Special Agent Bikowski that same day to inquire about the second search warrant, which Bikowski confirmed and provided a copy, but neither the agent nor the AUSA forwarded it on to Ricketts.

Two weeks later, on October 27, Ricketts reiterated his request for information about the putative second search warrant applicable to the cell phone. Again, on November 22, Ricketts reiterated his request for information about the second search warrant, asking if he should assume that a second search warrant for the cell phone did not exist. Still, the Government did not respond. On December 28, Ricketts informed the AUSA of his intent to move to suppress the evidence extracted from the cell phone, since the Government had failed to acknowledge the existence of a search warrant for that device. Ricketts also

informed the Government he intended to seek a continuance in order to have time to litigate the suppression issue. The AUSA responded that she did not object to the continuance, but she made no mention of the search warrant. On December 30, Mason's counsel moved to suppress the cell phone evidence, prompting the AUSA to request two extensions of time thereafter to prepare their response, giving it until February 23, 2022, to file a response to the suppression motion.

On February 22, after the AUSA determined that the Motion to Suppress rested primarily on the fact that a search warrant did not authorize the extraction of the phone evidence, she inquired again of Special Agent Bikowski concerning the missing search warrant, which he forwarded to her again as he had done on October 14, 2021. Then and only then, we're informed, that the AUSA "realized that the warrant had not been provided to the defense in a supplemental production," (Docket No. 100 at 5), whereupon she phoned Ricketts, apologized for her mistake, and emailed the search warrant and affidavit to him. The next day, the AUSA filed a response detailing this chain of events and requesting a 45-day stay of the proceedings to resolve how best to proceed with in response to the Motion to Suppress. Defense Counsel did not object, and the court granted the stay.

On March 10, Ricketts contacted the AUSA to convey his view that a substantive response by the Government to the Motion to Suppress was still needed. The Government again did not respond. By April 11, which was the expiration date of the 45-day stay, the Government had still not filed a response. On April 13, Ricketts again contacted the AUSA about the status of its intention to file. On April 21, when the courtroom deputy

4

clerk finally contacted both parties to inquire as to whether a response to the Motion to

Suppress would be filed, the Government stated that "[e]ven though we supplied a search

warrant for the object that was the basis of the defendant's motion, we will be happy to

file a proper objection." Docket No. 94-13 at 1. Having still received no response,

defense counsel was, to no surprise, utterly frustrated with the lack of responsive news by

the assigned AUSA and thus moved to dismiss the superseding indictment on May 4 for

prosecutorial misconduct. The Government filed a substantive response to the Motion to

Suppress on May 13, which the defense moved to strike based on its untimeliness. At the

conclusion of an evidentiary hearing, convened by the Court to address these motions,

this court denied the Motion to Dismiss and the Motion to Strike and stayed a ruling on

the Motion to Suppress.

## II.    DISCUSSION AND DECISION

### a. MOTION TO DISMISS

The court has the authority to dismiss indictments based on prosecutorial

misconduct, but it is "only warranted where a substantial right of the defendant has been

jeopardized." *United States v. Wilson*, 715 F.2d 1164, 1169 (7th Cir. 1983). And even if a

substantial right of the defendant were jeopardized, "absent demonstrable prejudice, or

substantial threat thereof, dismissal of the indictment is plainly inappropriate, even

though the violation may have been deliberate." *United States v. Morrison*, 449 U.S. 361,

365 (1981). Actual prejudice should be remedied by a new trial or suppression of the

evidence before the "drastic step" of dismissal is justified. *Id.* at 365 n.2. The Seventh

Circuit has "never taken what we see to be an extreme step of dismissing criminal

charges against a defendant because of government misconduct." *United States v. Childs*, 447 F.3d 541, 545 (7th Cir. 2006). Even in a case where "the conduct of the government was designed to deliberately mislead the court and defense counsel," the Seventh Circuit declined to dismiss because "[g]ranting such relief in the absence of prejudice to a defendant would be to confer an unearned windfall." *Id.* Because Mason has failed to show any actual prejudice here from the prosecutor's admittedly unjustified, unprofessional delay in providing discovery, let alone show enough prejudice to warrant this "drastic step," the Motion to Dismiss must be denied. *Morrison*, 449 U.S. at 365. The search warrant, late as its disclosure was, was finally turned over well in advance of trial, allowing Defendant to prepare his defense without risk of other belated disclosures or sabotage of the Government. Further, we accept the Government's explanation that the belated disclosure was inadvertent, and not by any intentional strategic design.

### b.  MOTION TO STRIKE

Having denied the Motion to Dismiss, the court also denies the Motion to Strike the Government's response to the Motion to Dismiss for its lack of any factual or legal foundation.

### c.  MOTION TO SUPPRESS

The Fourth Amendment protects "against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment "says nothing about suppressing evidence obtained in violation of this command." *Davis v. United States*, 564

6

U.S. 229, 236 (2011). "That rule—the exclusionary rule—is a prudential doctrine created

by [the Supreme Court] to compel respect for the constitutional guaranty." *Id.* (internal

citations and quotation marks omitted). In order to obtain the benefits of the exclusionary

rule and suppress evidence, a defendant must make a prima facie showing of illegality.

*United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). Here, Mason advanced

three separate arguments: (1) the Government was required to obtain a search warrant for

the contents of his phone, (2) the search warrant for the vehicle failed to meet the

particularity standards necessary to authorize a search of the Defendant's phone, and (3)

in the alternative, the search warrant for the vehicle did not retroactively authorize law

enforcement to search the contents of his phone. Mason did not revise these claims

following disclosure of the second search warrant by the Government. Nevertheless, we

shall undertake a Fourth Amendment analysis in ruling on Mason's Motion to Suppress.

### i.  WARRANT REQUIREMENT

As the text of the Fourth Amendment makes clear, "the ultimate touchstone of the

Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403

(2006). "Where a search is undertaken by law enforcement officials to discover evidence

of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial

warrant." *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). Such a warrant

ensures that the inferences to support a search are "drawn by a neutral and detached

magistrate instead of being judged by the officer engaged in the often competitive

enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1948). Here,

7

law enforcement did obtain such a warrant for both the vehicle and the cell phone, so we shall examine the adequacy of the warrant below.

### ii.  VALIDITY OF THE WARRANT

A valid search warrant "require[s] only three things": (1) an independent magistrate issuing it, (2) a showing of probable cause "that the evidence sought will aid in a particular apprehension or conviction for a particular offense," and (3) a particular description of "the things to be seized, as well as the place to be searched." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal quotations and citations omitted). Here, the warrant was issued by an independent judicial officer, and the warrant "particularly describ[ed] . . . the place to be searched" and "the persons or things to be seized." *United States v. Grubbs*, 547 U.S. 90, 98 (2006). Specifically, the warrant authorized search of the "Red IPhone with decals and 'Product Red' on the outside rear panel of the phone" for "any items concerning narcotic transactions, any and all metadata, ledgers, notes, text messages, phone calls, logs, photographs, social media data, emails and or receipts." Docket No. 100-9 at 1. With these two elements satisfied, we now turn the more fact-sensitive determination of probable cause.

"Probable cause is a practical, nontechnical inquiry that asks whether there is a fair probability, given the totality of the circumstances, that evidence of a crime will be found in a particular place." *United States v. Orozco*, 576 F.3d 745, 748 (7th Cir. 2009). Probable cause to support the issuance of a warrant is established by "'facts sufficient to induce a reasonably prudent person to believe that a search . . . will uncover evidence of a crime.'" *United States v. Muhammad*, 928 F.2d 1461, 1464−65 (7th Cir. 1991) (quoting

8

*United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990)). "When, as here, an affidavit is the only evidence presented to a judge to support a search warrant, 'the validity of the warrant rests solely on the strength of the affidavit.'" *United States v. Mykytiuk,* 402 F.3d 773, 775 (7th Cir. 2005) (quoting *United States v. Peck,* 317 F.3d 754, 755–56 (7th Cir. 2003)). There is also "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In issuing a search warrant, "a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. McClellan,* 165 F.3d 535, 546 (7th Cir. 1999). "And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238−239 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). "[A] magistrate's determination of probable cause is to be 'given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.'" *United States v. Pritchard*, 745 F.2d 1112, 1120 (7th Cir. 1984)

9

(quoting *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir. 1982)). And in doubtful or borderline cases, the issue is properly resolved in favor of upholding the warrant. *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000).

In the case at bar, the search warrant affidavit referenced the fact that Trooper Abbott and Senior Trooper Lamaster conducted a traffic stop "where approximately 14 oz of suspected cocaine were [sic] seized and approximately 11 oz of suspected heroin was seized from" Smyzer and Mason. Docket. No. 100-9 at 2. Both suspects were arrested at the scene and were found to be in possession of cell phones. The affidavit also describes the cell phones in Smyzer's and Mason's possession. The affidavit then explains that "through education, training and experience in drug investigations, your affiant knows that persons involved in the drug trade often conduct their business using cellular telephones and that said cellular telephones often contain evidence in the memory of the device, making the cellular telephones both fruits and instrumentalities of the crime(s)," (*id.* at 3), and that the affiant "believes that the described phone contains evidence which is relevant to the investigation of dealing in Methamphetamine, Heroin, Cocaine and controlled substances." *Id.* Reading the affidavit "as a whole in a realistic and common sense manner," the magistrate here reasonably concluded there was probable cause to search Mason's cell phone as well as the seized and impounded vehicle. *Rambis*, 686 F.2d at 622. The searches do not provide any basis for a finding of unconstitutionality or a basis for suppression of their fruits.

### III.    CONCLUSION

Accordingly, we **DENY** Mr. Mason's Motion to Suppress [Docket No. 81], his

Motion to Dismiss [Docket No. 94], and his Motion to Strike [Docket No. 99].

IT IS SO ORDERED.

Date:          6/30/2022

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jonathan S. Ricketts
JONATHAN RICKETTS ATTORNEY AT LAW
jricketts@rickettslawoffices.com

Todd Stanton Shellenbarger
UNITED STATES ATTORNEY'S OFFICE (Evansville)
Todd.Shellenbarger@usdoj.gov

Lauren Wheatley
UNITED STATES ATTORNEY'S OFFICE (Evansville)
lauren.wheatley@usdoj.gov